Jose L. Patiño (CA Bar No. 149568)
jlpatino@jonesday.com
Nicola A. Pisano (CA Bar No. 151282)
napisano@jonesday.com
Christopher C. Bolten (CA Bar No. 268284)
ccbolten@jonesday.com
JONES DAY
12265 El Camino Real, Suite 200
San Diego, CA 92130
Phone: (858) 314-1200
Fax: (858) 314-1150

Attorneys for Plaintiffs
FUTUREWEI TECHNOLOGIES, INC. and
HUAWEI DEVICE USA INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| FUTUREWEI TECHNOLOGIES, INC. and HUAWEI DEVICE USA INC. <br><br> Plaintiffs, <br><br> v. <br><br> ACACIA RESEARCH CORPORATION; ACCESS CO. LTD.; and SMARTPHONE TECHNOLOGIES, LLC <br><br> Defendants. | Case No. 8:12-cv-0511 AG (JPRx) <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANT ACACIA RESEARCH CORPORATION'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** <br><br> **PUBLIC VERSION** <br><br> Hearing Date:  August 27, 2012 <br> Time:          10:00 a.m. <br> Courtroom:      10D <br> Judge:          Hon. Andrew J. Guilford |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................... 1

II.   THE FACTUAL ALLEGATIONS OF THE SECOND AMENDED
      COMPLAINT AND THEIR REASONABLE INFERENCES ..................... 3

III.  ARGUMENT ......................................................................................... 5

      A.    Standard Of Review ............................................................. 5

      B.    There Is An Actual And Justiciable Controversy Between
            Acacia And Huawei ............................................................. 6

      C.    Huawei's Status As A Third Party Beneficiary Is Not Subject To
            Dismissal ............................................................................ 11

      D.    Litigation-Related Privileges Are Not Applicable To The
            Tortious Interference Claims ............................................. 13

      E.    Cognizable Tortious Interference And Unfair Competition
            Claims Are Alleged ........................................................... 14

      F.    Declaratory Judgment Of An Alter Ego States A Cause Of
            Action ................................................................................. 16

      G.    Alternatively, Plaintiffs Are Entitled To Jurisdictional Discovery
            And/Or Leave to Amend ..................................................... 17

IV.   CONCLUSION .................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

CASES

*ABI, Inc. v. City of Los Angeles*,
  153 Cal. App. 3d 669 (1984)............................................................................. 9

*Aetna Life Ins. v. Haworth*,
  300 U.S. 227 (1937)......................................................................................... 6

*Ahcom, Ltd. v. Smeding*,
  623 F.3d 1248 (9th Cir. 2010)........................................................................ 16

*Allied Machine & Eng'g Corp. v. Competitive Carbide, Inc.*,
  2012 U.S. Dist. LEXIS 59014 (N.D. Ohio April 25, 2012).................................. 11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................... 5

*Aspex Eyewear, Inc. v. Miracle Optics, Inc.*,
  434 F.3d 1336 (Fed. Cir. 2006)..................................................................... 8, 9

*Bangkok Broadcasting & T.V. Co. v. IPTV Corp.*,
  742 F. Supp. 2d 1101 (C.D. Cal. 2010) ........................................................... 10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................... 5, 17

*Bryant v. Matvieshen*,
  U.S. Dist. LEXIS 74787 (E.D. Cal. May 30, 2012)........................................... 16

*Bylin Heating Sys. v. M & M Gutters, LLC*,
  2008 U.S. Dist. LEXIS 21253 (E.D. Cal. Mar. 18, 2009) .................................. 14

*Catch Curve, Inc. v. Venali, Inc.*,
  519 F. Supp. 2d 1028 (C.D. Cal. 2007) ...................................................... 14, 15

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*,
  20 Cal. 4th 163 (1999) ............................................................................... 15, 16

*Creps v. Truco Marine*,
  LLC, 2011 U.S. Dist. LEXIS 129293 (N.D. Cal. Nov. 8, 2011) ........................... 12

*Decker v. Mazda Motor of Am., Inc.*,
  2011 U.S. Dist. LEXIS 124182 (C.D. Cal. Oct. 24, 2011).................................. 17

*Delano Farms Co. v. California Table Grape Comm'n*,
  655 F.3d 1337, 1342-43 (Fed. Cir. 2011) ....................................................... 10

PLAINTIFFS' OPP. TO ACACIA
RESEARCH'S MOTION TO DISMISS SAC

1

2

**TABLE OF AUTHORITIES**
**(continued)**

Page

3

4

*Electro Source, LLC v. Nyko Techs., Inc.*,
 2002 U.S. Dist. LEXIS 28436 (C.D. Cal. Apr. 15, 2002)........................ 17

5

*Gallimore v. State Farm Fire & Cas. Ins. Co.*,
 102 Cal. App. 4th 1388 (2002) .................................................. 14

6

7

*Hewlett-Packard Co. v. Acceleron LLC*,
 587 F.3d 1358 (Fed. Cir. 2009)........................................... 6, 7, 10

8

9

*Hub City Solid Waste Servs., Inc. v. City of Compton*,
 186 Cal. App. 4th 1114 (2010) ................................................. 16

10

*In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*,
 2012 U.S. Dist. LEXIS 90233 (C.D. Cal. May 14, 2012) ...................... 6

11

12

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*,
 248 F.3d 1333 (Fed. Cir. 2001)................................................. 9

13

14

*Karo v. San Diego Symphony Orchestra Ass'n*,
 762 F.2d 819 (9th Cir. 1985).................................................. 12

15

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ............................................................ 7

16

17

*Maykuth v. Adolph Coors Co.*,
 690 F.2d 689 (9th Cir. 1982)................................................... 9

18

19

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007) ....................................................... 7, 10

20

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
 518 F.3d 897 (Fed. Cir. 2008).................................................. 10

21

22

*Monolithic Power Sys. V. O2 Micro Int'l Ltd.*,
 2007 U.S. Dist. LEXIS 22556 (N.D. Cal. Mar. 14, 2007)...................... 13

23

24

*Monolithic Power Systems, Inc. v. O2 Micro Int'l Ltd.*,
 2007 U.S. Dist. LEXIS 61961 (N.D. Cal. Aug. 13, 2007)...................... 10

25

*Morrow v. Microsoft Corp.*,
 499 F.3d 1332 (Fed. Cir. 2007)............................................... 8, 9

26

27

*Orchid Biosciences, Inc. v. St. Louis Univ.*,
 198 F.R.D. 670 (S.D. Cal. 2001)............................................... 18

28

# TABLE OF AUTHORITIES
## (continued)

Page

*Phillip J. Kronzer Found. for Religious Research v. Dolan*,
   2006 U.S. Dist. LEXIS 58968 (N.D. Cal. Aug. 2, 2006)...................................... 16

*Questrel, Inc. v. Merriam-Webster, Inc.*,
   2011 U.S. Dist. LEXIS 154753 (C.D. Cal. Mar. 23, 2011) ................................. 2, 3

*Shell Oil Co. v. Amoco Corp.*,
   970 F.2d 885 (Fed. Cir. 1992)............................................................................ 7

*Spinks v. Equity Residential Briarwood Apartments*,
   171 Cal. App. 4th 1004 (2009) ........................................................................ 12

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011)........................................................................ 5, 6

*Textile Productions, Inc. v. Mead Corp.*,
   134 F.3d 1481 (Fed. Cir. 1998)......................................................................... 8

*Trend Micro Corp. v. WhiteCell Software, Inc.*,
   2010 U.S. Dist. LEXIS 124991 (N.D. Cal. Nov. 15, 2010)................................. 11

*Troll Busters LLC v. Roche Diagnostics GmbH*,
   2011 U.S. Dist. LEXIS 98441 (S.D. Cal. Aug. 31, 2011) .................................... 5

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
   944 F.2d 870 (Fed. Cir. 1991)........................................................................... 7

*Weiland Sliding Doors & Windows, Inc., v. Panda Windows & Doors, LLC*
   2010 U.S. Dist. LEXIS 115312 (S.D. Cal. Oct. 28, 2010) ............................ 13, 14

*Wells Fargo & Co. v. Wells Farge Express Co.*,
   556 F.2d 406 (9th Cir. 1977)......................................................................... 16

*WiAV Solutions, LLC v. Motorola, Inc.*,
   631 F.3d 1257 (Fed. Cir. 2010)......................................................................... 8

*Yamaha Motor Co., Ltd. v. Superior Court*,
   174 Cal. App. 4th 264 (2009) ........................................................................... 5

STATUTES

28 U.S.C. § 2201(a) ........................................................................................... 6

California Civil Code § 47(b) ....................................................................... 13, 14

California Civil Code § 1442 ............................................................................. 9

# TABLE OF AUTHORITIES
## (continued)

**Page**

**OTHER AUTHORITIES**

Fed. R. Civ. Proc. 8(a)(2) ............................................................................... 5

Fed. R. Civ. Proc. 10(c) ............................................................................ 5, 13

Rule 12(b)(6) ................................................................................................. 5

Article III of the U.S. Constitution ...................................................... 6, 7, 10

PLAINTIFFS' OPP. TO ACACIA
RESEARCH'S MOTION TO DISMISS SAC

Plaintiffs Futurewei Technologies and Huawei Device USA (collectively, "Huawei"), oppose the Motion to Dismiss the Second Amended Complaint (the "SAC") filed by Acacia Research Corporation ("Acacia") as follows.

## I.   INTRODUCTION

Defendant Access Co. Ltd ("Access") entered into an Exclusive License Agreement (the "License") with Acacia[1] and SmartPhone Technologies, LLC ("SmartPhone") regarding a patent portfolio acquired from Palm, Inc. in California.

REDACTED

Huawei has been a customer of Access for the better part of a decade.  In breach of the protections afforded Huawei in the License, and the contractual bar to enforcement proceedings against it as an Access customer, with Acacia's backing SmartPhone sued Huawei for patent infringement of five Access patents covered by the License in the Eastern District of Texas on April 3, 2012 (the "Texas Case").

Acacia is SmartPhone's alter ego, and the public record indicates that Acacia itself retains an interest in the Access patents.  As such, SmartPhone's assertion of Access's patents in Texas created a conflict between all the parties in suit.  Because Access retained substantial rights in the patents under the License, including the ability to license the patents to its customers, the interest of Acacia and SmartPhone in the License is not exclusive.  Further, because SmartPhone is foreclosed from pursuing Huawei under the License because it is Access's customer, under the

---

[1]   The Acacia signatory of the License was Acacia Patent Acquisitions LLC, that Acacia asserts is now known as Acacia Research *Group*, and is a wholly-owned subsidiary of Defendant Acacia Research *Corporation*.  Mot. at 3:11-15. Huawei's presuit investigation revealed that Acacia Research *Corporation* acquired the interest in the License.  *See* SAC ¶¶ 19, 174; Request for Judicial Notice in Support of Plaintiffs' Opposition to Defendants' Motions to Dismiss ("Huawei RJN") Ex. D.  Discovery will reveal whether Acacia Research *Group* should be added, or should substitute for Acacia Research *Corporation*.

1   applicable California contract law, Access arguably retained rights to pursue

2   alleged infringers Acacia and SmartPhone cannot.  Because SmartPhone is barred

3   from enforcing the Access patents against Huawei, the Texas Case can be pursued,

4   if at all, only by Access stepping into SmartPhone's shoes, or by Access filing its

5   own action against Huawei.  To resolve the question of who can sue Huawei on the

6   Access patents, and to settle Access's complicity in the breach of the License by

7   Acacia and SmartPhone, a concrete controversy of sufficient immediacy was thrust

8   upon Huawei on April 3, 2012, when Acacia's SmartPhone asserted the Access

9   patents in the Texas Case.

10   The following day, April 4, 2012, Huawei filed this case in California against

11   Acacia, Access and SmartPhone, predominantly because the License required that

12   **REDACTED**

13   

14   This broadly stated, and mandatory,

15   forum selection clause required Huawei to assert its claims based on the License in

16   this forum, and this forum only.  *Accord Questrel, Inc. v. Merriam-Webster, Inc.*,

17   SACV 10-1907 AG (MLGx), 2011 U.S. Dist. LEXIS 154753 (C.D. Cal. Mar. 23,

18   2011) (Guilford, J.).  Also, while there is personal jurisdiction available over Japan-

19   based Access in California, there is none in Texas.  Because Huawei has no basis to

20   plead jurisdiction in Texas against Access, and both Acacia and SmartPhone reside

21   in this District, this Court is the appropriate forum for this case.

22   The remaining grounds articulated by Acacia beyond its unavailing challenge

23   to declaratory judgment jurisdiction also fail.  The third party beneficiary cause of

24   action is not resolved on the face of the License, which requires discovery

25   concerning the intent of the parties, and to the extent the License is undisputed, it

26   affirms Huawei's interest as a third party beneficiary as a matter of law.  Further,

27   litigation-related privileges are inapplicable to Huawei's tortious interference and

28   unfair competition claims.  The wrongful acts include breach of contract and unfair

competition, which are not protected speech.  SmartPhone's litigation in the Texas Case is evidence in support of Huawei's claims, not the gravamen of the causes of action.  Finally, Huawei's detailed, twenty-one page Second Amended Complaint states plausible claims that exceed the notice required at the pleadings stage, including for the stand-alone claim regarding Acacia's status as SmartPhone's alter ego.

## II.  THE FACTUAL ALLEGATIONS OF THE SECOND AMENDED COMPLAINT AND THEIR REASONABLE INFERENCES

In 2005, Access acquired PalmSource, Inc. and its trove of patents obtained by Palm, Inc. in California, including the five patents-in-suit here.  *See* SAC ¶¶ 12-18 & Exs. A-E.  Access then entered into the License with Acacia on July 31, 2009. Id. ¶¶ 19-20 & Ex. F.  SmartPhone entered into an Assignment and Assumption Agreement (the "Assumption") with Acacia dated December 14, 2009, where it agreed to step into the shoes of Acacia with respect to the License.  *Id.* ¶ 22 & Ex. H.  But Access was not a signatory to the Assumption.  *See id.*  The public record indicates that even after SmartPhone entered into the Assumption in December 2009, Access and Acacia retained an interest in the License, and continue to maintain that interest.  SAC ¶¶ 31, 174; *see also* Huawei RJN Ex. D.

The Huawei entities are networking and telecommunications companies that market and sell mobile cellular handsets.  SAC ¶ 32.  In support of its cell phone business, Huawei has been a customer of Access for nearly ten years.  *Id.* ¶ 33. Huawei and Access are parties to a contract pursuant to which Huawei purchases Access products for integration into certain of its cell phones.  *Id.* ¶¶ 34, 141, 151. As part of its business relationship with Access, Huawei expected that Access would protect it, as its customer, from third party lawsuits asserting patents owned by Access, and Access did so in the License by not assigning all substantial rights in the patents-in-suit to either Acacia or SmartPhone.  *Id.* ¶¶ 29, 37-38.

In protection of Huawei as its customer, the License provides that Acacia, and later also SmartPhone,



REDACTED

SAC ¶ 20 & Ex. F at SPT000096.  Access intended that Huawei, as a direct customer of Access, benefit from the protection afforded in the License, and to which Acacia and SmartPhone agreed.  *Id.* ¶ 128.  Further, Acacia and SmartPhone knew of the contract between Huawei and Access, that Huawei is a long-term, direct customer of Access falling under the scope of the carve-out in the License, and they intended to disrupt the performance of the contract between Huawei and Access by breaching the License's proscription from pursuing Huawei on the licensed Access patents.  *Id.* ¶¶ 35, 133-135, 142-145, 152-154.

REDACTED

Acacia conducts business in this District and has its principal place of business in Newport Beach, California.  SAC ¶ 8.  SmartPhone also conducts business in this District, and has registered the same Newport Beach address of Acacia as its own with the Texas Secretary of State.  *Id.*; *see also* Huawei RJN Ex. C.  Access also conducts business in Orange County, California, has consented to jurisdiction here, and even if it had not waived personal service in this District in the License, it is subject to service of process in California through its wholly-owned subsidiary, IP Infusion, Inc.  *See* SAC ¶ 9; Huawei RJN Exs. A-B; *accord Yamaha Motor Co., Ltd. v. Superior Court*, 174 Cal. App. 4th 264, 274-75 (2009) (service on a Japanese entity under the Hague Convention satisfied by service on California subsidiary); *see also Troll Busters LLC v. Roche Diagnostics GmbH*, No. 11cv56-IEG (WMc), 2011 U.S. Dist. LEXIS 98441, *34-*35 (S.D. Cal. Aug. 31, 2011) ("There is ample authority for the proposition that a domestic corporation may be considered the 'general agent' of a foreign corporation for purposes of service of process") (multiple citations omitted).

## III.   ARGUMENT

### A.   Standard Of Review.

A complaint is required only to include a "short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In this regard, "'detailed factual allegations' are not required."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  The complaint need only plead sufficient facts to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In this regard, a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."  Fed. R. Civ. Proc. 10(c).  As to the plausibility of specific claims for relief, if "there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)

1  (reversing district court's dismissal of complaint).

2      "The Court must accept as true all factual allegations in the complaint and

3  must draw all reasonable inferences from those allegations, construing the

4  complaint in the light most favorable to the plaintiff." *In re Land Rover LR3 Tire*

5  *Wear Prods. Liab. Litig.*, MDL 09-2008 AG, 2012 U.S. Dist. LEXIS 90233, *5

6  (C.D. Cal. May 14, 2012) (citation omitted).  In this regard, *Starr* guides as follows:

7        First, to be entitled to the presumption of truth, allegations
   in a complaint or counterclaim may not simply recite the

8        elements of a cause of action but must contain sufficient
   allegations of underlying facts to give fair notice and to

9        enable the opposing party to defend itself effectively.
   Second, the factual allegations that are taken as true must

10       plausibly suggest an entitlement to relief, such that it is
   not unfair to require the opposing party to be subjected to

11       the expense of discovery and continued litigation.

12 *Starr*, 652 F.3d at 1216.  As documented above, and set forth more fully below,

13 Huawei has pled plausible and non-speculative causes of action that belong in this

14 Court, and that put Acacia on the required notice to mount a defense.

15     **B.**    **There Is An Actual And Justiciable Controversy Between Acacia**
               **And Huawei.**
16

17     The Declaratory Judgment Act provides that, "[i]n a case of actual

18 controversy within its jurisdiction . . . any court of the United States . . . may

19 declare the rights and other legal relations of any interested party seeking such

20 declaration." 28 U.S.C. § 2201(a).  The phrase "a case of actual controversy" in the

21 Act refers to the types of "cases" and "controversies" that are justiciable under

22 Article III of the U.S. Constitution.  *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 239-

23 40 (1937).

24     There is no bright line rule for distinguishing cases that satisfy the actual

25 controversy requirement from those that do not satisfy this requirement.  *Hewlett-*

26 *Packard Co. v. Acceleron LLC,* 587 F.3d 1358, 1364 (Fed. Cir. 2009).  The Court

27 must consider on a case-by-case basis whether an actual controversy exists and

28 declaratory jurisdiction is proper where "the facts alleged, under all the

1   circumstances, show that there is a substantial controversy, between parties having

2   adverse legal interests, of sufficient immediacy and reality to warrant the issuance

3   of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127

4   (2007); *see also Shell Oil Co. v. Amoco Corp.,* 970 F.2d 885, 888 (Fed. Cir. 1992)

5   (holding that a court must consider the "totality of the circumstances" to determine

6   whether an actual controversy exists). The *MedImmune* decision "lowered the bar

7   for a plaintiff to bring a declaratory judgment action in a patent dispute." *Hewlett-*

8   *Packard Co.,* 587 F.3d at 1361.

9       In determining if an action presents a justiciable Article III controversy,

10   courts typically employ the doctrines of standing or ripeness. "[T]he irreducible

11   constitutional minimum of standing contains three elements." *Lujan v. Defenders*

12   *of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an

13   injury in fact – an invasion of a legally protected interest which is (a) concrete and

14   particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.*

15   "Second, there must be a causal connection between the injury and the conduct

16   complained of – the injury has to be 'fairly trace[able] to the challenged action of

17   the defendant . . .'" *Id.* "Third, it must be 'likely,' as opposed to merely

18   'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561.

19       It bears noting that Acacia's reliance on case law regarding the impact of

20   certain undisputed written instruments attached to a complaint is rather inapposite

21   in this case. The License, which calls itself an "Exclusive License," is not entitled

22   to such a presumption. The Federal Circuit has held that, with respect to license

23   agreements, and the respective rights as between the patent owner and a purported

24   "exclusive" licensee, the labels used by the parties are meaningless if the operative

25   agreement shows otherwise. "It is well settled that 'whether a transfer of a

26   particular right or interest under a patent is an assignment or a license does not

27   depend upon the name by which it calls itself, but upon the legal effect of its

28   provisions.'" *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944

1   F.2d 870, 875 (Fed. Cir. 1991).  In "determining whether a party holds the

2   exclusionary rights, we determine the substance of the rights conferred on that party,

3   not the characterization of those rights as exclusive licenses or otherwise."  *Morrow*

4   *v. Microsoft Corp.*, 499 F.3d 1332, 1340 n.7 (Fed. Cir. 2007).

5          Here, Access retained a number of substantial rights in the patent, including

6   the right to license its customers to use the patents licensed to SmartPhone.  *See*

7   SAC ¶ 20 & Ex. F at SPT000096.  Where "a patentee-licensor is free to grant

8   licenses to others, licensees under that patent are not exclusive licensees."  *Textile*

9   *Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed. Cir. 1998).  Given that

10  Huawei could obtain a license to the Access patents by becoming an Access

11  customer (if it was not already a customer), Acacia's SmartPhone does not possess

12  all substantial rights.  *See also WiAV Solutions, LLC v. Motorola, Inc*., 631 F.3d

13  1257, 1266 (Fed. Cir. 2010) ("an exclusive licensee lacks standing to sue a party for

14  infringement if that party … has the ability to obtain such a license from another

15  party with the right to grant it").  In addition, Acacia's SmartPhone is barred from

16  asserting the Access patents against Access's direct or indirect customers.  SAC ¶

17  20 & Ex. F at SPT000096.  Where, as here, the licensee's power to sue is less than

18  absolute, it does not have all substantial rights to sue in its own name.  *See, e.g.,*

19  *Aspex Eyewear, Inc. v. Miracle Optics, Inc.,* 434 F.3d 1336, 1342-45 (Fed. Cir.

20  2006) (lack of standing even through exclusive licensee received "(1) the exclusive

21  right to make, use, and sell products covered by the patent; (2) the right to sue for

22  infringement of the patent; and (3) a virtually unrestricted authority to sublicense its

23  rights under the agreement").  Indeed, as is factually asserted here by Huawei, and

24  must be assumed to be true, Acacia entered into a licensing agreement with the

25  Microsoft Corporation on October 8, 2010, regarding the Access-owned patents

26  *after* SmartPhone supposedly acquired the "exclusive" right to license those patents.

27  SAC ¶¶ 31, 174; *see also* Huawei RJN Ex. D.  Indeed, less than three weeks ago,

28  Access entered into a license agreement regarding its patent portfolio, along with

1   Acacia's SmartPhone, with the Hewlett-Packard Company.  *See id.* Ex. E.

2   Given that, irrespective of the labels recited in the License, Acacia and

3   SmartPhone do not possess all substantial rights in the Access patents, Acacia's

4   SmartPhone is required to join Access in the Texas Case.  *Morrow*, 499 F.3d at

5   1340 (licensee having fewer than all substantial rights in the patent is generally

6   required to join the patent owner); *see also Intellectual Prop. Dev., Inc. v. TCI*

7   *Cablevision of Cal., Inc.*, 248 F.3d 1333, 1347-48 (Fed. Cir. 2001) (similar).  On

8   this ground alone, there is a controversy between Acacia, Access and Huawei that

9   arose when SmartPhone filed the Texas Case, but there is more.  The License calls

10  for interpretation of its provisions under California law.  SAC ¶ 20 & Ex. F at

11  SPT000106.  In that the License precludes Acacia and SmartPhone from pursuing

12  Access's customers, California law arguably allows Access to pursue any such

13  infringers to avoid a confiscatory reading of the License.  *See, e.g., ABI, Inc. v. City*

14  *of Los Angeles*, 153 Cal. App. 3d 669, 682 (1984) ("Contracts and laws declaring a

15  forfeiture must be strictly construed"); Cal. Civ. Code § 1442 ("A condition

16  involving a forfeiture must be strictly interpreted against the party for whose benefit

17  it is created"); *see also Maykuth v. Adolph Coors Co.*, 690 F.2d 689, 693 (9th Cir.

18  1982) ("interpretation of this contract provision . . . was incorrect" because it

19  resulted in "a forfeiture, a penalty the law abhors").  As such, notwithstanding

20  language in the License suggesting Access has yielded its rights to enforce its

21  patents, customers of Access remain at risk under California law, and no customer

22  more than Huawei given the existing patent infringement suit that, at most, only

23  Access can pursue.

24  Accordingly, assertion of Access patents in Texas by Acacia's SmartPhone

25  created a conflict between Acacia, Access and Huawei with respect to those patents,

26  and who can assert them.  To resolve the question of who can sue Huawei on the

27  Access patents, and to settle the complicity of Acacia and Access in SmartPhone's

28  breach of the License, there is "a substantial controversy, between parties having

adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune,* 549 U.S. at 126.  There is simply no basis for dismissal where this case presents the prospect of resolving legal contentions of all parties to this dispute.  *See Monolithic Power Systems, Inc. v. O2 Micro Int'l Ltd.*, No. C 04-2000 CV, 2007 U.S. Dist. LEXIS 61961, *11 (N.D. Cal. Aug. 13, 2007) (quotation omitted) ("When there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal.").  Given that "hearing the case would serve the objectives for which the Declaratory Judgment Act was created," a "dismissal is rarely proper." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 902 (Fed. Cir. 2008).

Acacia further contends that there is no actual controversy allegedly because no "affirmative act" has been committed by Acacia against Huawei.  But as SmartPhone's alter ego, SmartPhone's acts are Acacia's acts. *E.g., Bangkok Broadcasting & T.V. Co. v. IPTV Corp.*, 742 F. Supp. 2d 1101, 1120 (C.D. Cal. 2010) (the alter ego doctrine makes a parent corporation liable for the actions of a subsidiary corporation).  Acacia has guided and directed SmartPhone in its affirmative litigation against Huawei, giving rise to an actual controversy between Acacia and Huawei. *See Hewlett-Packard Co.,* 587 F.3d at 1362 (If a "party has actually been charged with infringement of the patent, there is, necessarily, a case or controversy adequate to support declaratory judgment jurisdiction.") (citing *Cardinal Chem. Co. v. Morton Int'l,* 508 U.S. 83, 96 (1993)).

Moreover, regardless whether Acacia made an "affirmative act" against Huawei, there is a dispute between the parties that is justiciable under Article III.  Indeed, courts frequently permit, if not require, a declaratory judgment action to proceed against a defendant who did not make an "affirmative act" against the plaintiff.  For example, the Federal Circuit held in *Delano Farms Co. v. California*

*Table Grape Comm'n* that a patent owner was a necessary and indispensible party in a declaratory judgment action against a licensee even though the patent owner did not have any communication with the party bringing suit. 655 F.3d 1337, 1342-43 (Fed. Cir. 2011); *see also Trend Micro Corp. v. WhiteCell Software, Inc.*, No. C 10-02248 WHA, 2010 U.S. Dist. LEXIS 124991, at *12-*13 (N.D. Cal. Nov. 15, 2010) (patent owner added as a defendant to a declaratory judgment action even though the patent owner had not committed any affirmative act with regard to the patent-in-suit against the declaratory judgment plaintiff, and had executed a covenant not to sue). Additionally, a Court recently denied the dismissal of declaratory judgment claims against prior assignees of a patent even though the declaratory judgment defendants no longer possessed an ownership interest in the patents. *Allied Machine & Eng'g Corp. v. Competitive Carbide, Inc.*, No. 1:11-cv-2712, 2012 U.S. Dist. LEXIS 59014, *10-*11 (N.D. Ohio April 25, 2012). Since Acacia is part of the chain of title for the patents in suit, this action presents a sufficient adversity alone to afford jurisdiction.

In view of the "totality of circumstances," there is an actual controversy between Acacia and Huawei that requires adjudication and that this Court can resolve.

**C.    Huawei's Status As A Third Party Beneficiary Is Not Subject To Dismissal.**

REDACTED

This is not a provision that can be characterized to be for the sole benefit of the contracting parties as it expressly spells out a benefit applicable to customers and end-users of Access's

products or services.  *Accord Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1022 (2009) ("The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract") (citation omitted).  Huawei has alleged that Access and Acacia intended by means of this provision for Huawei, as a direct customer of Access, to benefit from this contractual protection directed to third parties such as Huawei.  SAC ¶¶ 125, 128.  Huawei has thus stated a claim for relief as a third party beneficiary.  *See also Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821-22 (9th Cir. 1985) ("A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident.") (citation omitted).

Acacia seeks dismissal of this cause of action because it is purportedly not a party to it.  That is in factual dispute.  As noted above, the signatory to the License later yielded its interests to Acacia, and evidence gathered as part of Huawei's presuit investigation indicated that Acacia stepped into the shoes of signatory Acacia Patent Acquisitions LLC with respect to the Access patents.  *See* SAC ¶¶ 19, 174; Huawei RJN Ex. D.  Discovery, not dismissal, is appropriate to determine the correct Acacia entity that is party to the declaration of rights requested by Huawei. *See, e.g., Creps v. Truco Marine*, LLC, No. C-11-01751-DMR, 2011 U.S. Dist. LEXIS 129293, *3-*4 (N.D. Cal. Nov. 8, 2011) (jurisdictional discovery granted to determine proper parties); *see also* Huawei RJN Ex. F (recent declaratory judgment action asserting claims against both Acacia Research *Group* and Acacia Research *Corporation*).  Acacia's remaining argumentation here rest again on the purported lack of an affirmative act, which for the reasons documented above, is of no legal moment.

/ / /

/ / /

/ / /

### D. Litigation-Related Privileges Are Not Applicable To The Tortious Interference Claims.

Acacia asserts the *Noerr-Pennington* doctrine and litigation privilege under California Civil Code Section 47(b) with respect to the tortious interference claims in the SAC, but litigation-related privileges are inapplicable.

The SAC predicates the claims of tortious interference and unfair competition on the breach of the License by Acacia's SmartPhone pursuing enforcement proceedings against a customer of Access in direct contravention of its promise not to do so. *See* SAC ¶¶ 125-170.[2]  Acacia and SmartPhone knew that Huawei was a customer of Access falling under the scope of the carve-out in the License precluding SmartPhone from "institut[ing] enforcement actions against such customers of [Access]." *See id.* ¶¶ 35, 133-135, 142-145, 152-154.  Acacia's SmartPhone intended to disrupt Huawei's long-term, direct customer relationship with Access by breaching its contractual agreement to not pursue customers of Access like Huawei. *Id.* ¶¶ 35, 133-135, 142-145, 152-154.[3]

As such, the gravamen of Huawei's pleading is SmartPhone's unlawful, wrongful and unfair breach of its promises set forth in the License, with Acacia's backing, not SmartPhone's First Amendment-protected activity. *See Weiland Sliding Doors & Windows, Inc., v. Panda Windows & Doors, LLC* No. 10 CV 677

---

[2] Factual allegations incorporated by reference by Huawei's tortious interference claims are adopted as a matter of law in support of those causes of action. *See* Fed. R. Civ. Proc. 10(c).

[3] A reasonable inference from these allegations is that the Texas Case is objectively baseless and in bad faith as SmartPhone, as guided by Acacia, knows it is barred from pursuing Huawei on Access-owned patents.  Huawei could amend its allegations to state so more specifically in further factual support of its claims for relief.  *Accord Monolithic Power Sys. V. O2 Micro Int'l Ltd.*, No. C 04-2000 CV, 2007 U.S. Dist. LEXIS 22556, *24 (N.D. Cal. Mar. 14, 2007) ("continued pursuit of its claims of infringement" notwithstanding a known bar "is objectively baseless and in bad faith and, therefore, this activity is not immune and can be the basis for [an] unfair competition claim.").

1    JLS (AJB), 2010 U.S. Dist. LEXIS 115312, *13 (S.D. Cal. Oct. 28, 2010) (the

2    Noerr-Pennington doctrine bars claim "that has as its gravamen constitutionally-

3    protected petitioning activity") (citation omitted); *Bylin Heating Sys. v. M & M*

4    *Gutters, LLC*, No. 2:07-CV-00505-FCD-KJM, 2008 U.S. Dist. LEXIS 21253, *13-

5    14 & n.4 (E.D. Cal. Mar. 18, 2009) (Section 47(b) applies to communications at

6    issue; the "litigation privilege does not apply as a matter of law merely because a

7    subsequent suit is filed.").  The litigation in the Texas Case is thus simply evidence

8    of SmartPhone's misconduct as guided by Acacia, not the wrongful acts in suit.

9    *See Gallimore v. State Farm Fire & Cas. Ins. Co.*, 102 Cal. App. 4th 1388, 1399

10   (2002) (cautioning against confusing "*wrongful acts* with the *evidence* that plaintiff

11   will need to prove such misconduct") (emphasis in original).  Even where litigation

12   is the direct manifestation of the alleged wrongful conduct, the litigation privileges

13   do not apply.  *Catch Curve, Inc. v. Venali, Inc.*, 519 F. Supp. 2d 1028, 1034-35

14   (C.D. Cal. 2007) (denying motions to dismiss tortious interference and Section

15   17200 claims based on anticompetitive claims evidenced by cease and desist letters

16   and "litigation and licensing strategy").

17        The tortious interference and unfair competition claims are thus not subject

18   to dismissal based on litigation-related privileges, especially not at this early stage.

19   *See, e.g., Weiland Sliding Doors*, 2010 U.S. Dist. LEXIS 115312, *16 ("Given the

20   intense factual findings required to assess the *Noerr-Pennington* doctrine and its

21   exceptions, the Court does not find it appropriate to resolve the privilege at this

22   stage.").

23        **E.    Cognizable Tortious Interference And Unfair Competition Claims**
             **Are Alleged.**

24

25        With regard to the tortious interference claims, Acacia rests primarily on the

26   argument that the wrongful act supposedly alleged – litigation – is privileged.  As

27   demonstrated above, the wrongful act is not predicated on privileged matter,

28   dispensing with this argument.  The only other deficiency asserted by Acacia with

respect to the tortious interference claims is that Huawei has failed to allege with sufficient clarity its unity of control over SmartPhone's interference by characterizing it as "Acacia's backing." Acacia's brief demonstrates it understands Huawei's allegation that it is the alter ego of SmartPhone, and that Huawei is not seeking to make Acacia vicariously liable as a shareholder of SmartPhone. *See* Mot. at 19. The motion in this regard should be denied, or leave to amend granted to more fully detail Acacia's alter ego relationship with SmartPhone.

The Section 17200 claim is similarly cognizable. In compliance with the pleading standards for this claim, Huawei has alleged at some length that Acacia's SmartPhone engaged in unlawful acts, including breach of contract and tortious interference. Huawei has also alleged that SmartPhone, with Acacia's backing, engaged in unfair acts, including refusing to honor its promise to not institute enforcement proceedings against Huawei, a party it knew was and is a customer of Access. Further, Acacia and SmartPhone did so with knowledge that any compensation secured from Huawei as Access's customer would be shared with Access, which had contracted away its right to secure such compensation from its patents from its customers. SAC ¶ 165. A reasonable inference from Huawei's allegations is thus that Acacia, Access and SmartPhone conspired to deprive Huawei of its protections under the License for an anti-competitive purpose. This pleads a sufficient claim under Section 17200. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (primary purpose of Section 17200 is "preservation of fair business competition").

For the reasons articulated above, Huawei's tort claims do not fail, either based on the litigation privilege or otherwise. Accordingly, the unfair competition cause of action is not deprived of a predicate for the "unlawful" prong. *E.g.*, *Catch Curve*, 519 F. Supp. 2d at 1035 (denying motion to dismiss Section 17200 claim because the tortious interference claims withstood challenge). Further, reasonable inferences from the present factional allegations, as noted above, support the

1    "unfair" prong: "the word 'unfair' in [Section 17200] means conduct that threatens

2    an incipient violation of an antitrust law, or violates the policy or spirit of one of

3    those laws because its effects are comparable to or the same as a violation of law, or

4    otherwise significantly threatens or harms competition."  *Cel-Tech*, 20 Cal. 4th at

5    187.  Huawei could more specifically assert such facts with leave to amend.

6    **F.    Declaratory Judgment Of An Alter Ego States A Cause Of Action.**

7         Acacia makes a faulty contention that alter ego liability is not a cause of

8    action based on *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1251 (9th Cir. 2010),

9    which arose in the bankruptcy context.  The issue in *Ahcom* was not whether alter

10   ego liability is a cause of action, but whether a creditor of the bankruptcy *or* the

11   bankruptcy trustee has standing to assert a particular type of alter ego claim.  *Id.* at

12   1249-50.  That is, whether a creditor may assert "a general alter ego 'claim'"

13   alleging diversion of "corporate assets to the detriment of *all creditors*."  *Id.* at 1251

14   (emphasis in original).  The *Ahcom* Court's observation that such a general alter

15   ego claim on behalf of all creditors does not exist fails to speak to whether Huawei

16   may seek declaratory judgment of Acacia's status as SmartPhone's alter ego.

17        Indeed, seeking a declaratory judgment of alter ego liability is an accepted

18   means by which liability for the acts of a controlled corporate entity are adjudicated.

19   *E.g., Hub City Solid Waste Servs., Inc. v. City of Compton*, 186 Cal. App. 4th 1114,

20   1121 (2010); *Bryant v. Matvieshen*, 1:12-CV-00572 AWI SKO, 2012 U.S. Dist.

21   LEXIS 74787 (E.D. Cal. May 30, 2012); *Phillip J. Kronzer Found. for Religious

22   Research v. Dolan*, No. C-05-02077 RMW, 2006 U.S. Dist. LEXIS 58968 (N.D.

23   Cal. Aug. 2, 2006); *see also Wells Fargo & Co. v. Wells Farge Express Co.*, 556

24   F.2d 406, 421 (9th Cir. 1977) ("It is A.G.'s alter ego liability which could be

25   characterized as a cause of action arising either from the transaction of business or

26   the commission of a tort in Nevada for purposes of that state's long-arm statute.")

27        Acacia also seeks dismissal for lack of more detailed allegations regarding its

28   status as SmartPhone's alter ego.  At the pleading stage, Huawei is required only to

1   "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555.

2   Huawei alleges that Acacia owns SmartPhone, and that Acacia has a financial

3   interest in proceeds from prosecution of the asserted patents by SmartPhone.  SAC

4   ¶¶ 30-31.  Even after SmartPhone supposedly obtained the entire interest in

5   prosecuting the Access portfolio, public reports confirmed that Acacia continued to

6   serve as a party to licensing transactions.  *Id.* ¶ 174.  Huawei also pleads that the

7   "separate existence of SmartPhone and Acacia" is a "fiction" that would "promote

8   injustice" if countenanced at law.  *Id.* ¶ 175.  There is nothing nebulous about the

9   alter ego claim Huawei alleges, and more detailed facts in support of the cause of

10   action are expected in discovery.

11   ### G.   Alternatively, Plaintiffs Are Entitled To Jurisdictional Discovery And/Or Leave to Amend.

12

13   While the operative pleading is a Second Amended Complaint, the first two

14   amendments were primarily technical.  The First Amended Complaint corrected a

15   few typographical errors and enhanced the venue allegations with respect to

16   SmartPhone.  *See* Dkt. No. 7.  The Second Amended Complaint resulted from the

17   parties' agreement to make the License and related materials of record with the

18   Court under seal.  *See* Dkt. No. 21.  As this Court has noted, "even if the face of the

19   pleadings indicates that recovery is unlikely, the plaintiff is entitled to offer

20   evidence in support of the complaint." *Electro Source, LLC v. Nyko Techs., Inc.*,

21   No. CV 01-10825 DT (BQRx), 2002 U.S. Dist. LEXIS 28436, *14 (C.D. Cal. Apr.

22   15, 2002), citing *Scheuer v. Rhodes*, 416 U.S. 232 (1974).  With leave to amend,

23   further detail can be supplied, and refinements made to the pleadings, by Huawei.

24   *See, e.g. Decker v. Mazda Motor of Am., Inc.*, No. 11-0873 AG (MLGx), 2011 U.S.

25   Dist. LEXIS 124182, *6 (C.D. Cal. Oct. 24, 2011) ("Dismissal without leave to

26   amend is appropriate only when the Court is satisfied that the deficiencies of the

27   complaint could not possibly be cured by amendment") (citation omitted).  Further,

28   any factual deficiencies can be addressed by jurisdictional discovery.  *See, e.g.,*

1     *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 674-75 (S.D. Cal. 2001)

2     ("Discovery should be denied only where 'it is clear that further discovery would

3     not demonstrate facts sufficient to constitute a basis for jurisdiction'"), quoting

4     *Wells Fargo*, 556 F.2d at 430 n.24 (vacating district court's refusal to grant

5     jurisdictional discovery).

6     **IV.   CONCLUSION**

7         Acacia's motion is without merit.  There is a justiciable controversy between

8     Huawei and Acacia implicating this Court's declaratory judgment jurisdiction.  In

9     that the other bases for dismissal are either rejected by the law or are not fatal at the

10    pleadings stage, Acacia's motion should be denied.  Alternatively, jurisdictional

11    discovery and/or leave to amend should be granted to address any deficiencies

12    noted by the Court.

13    Dated:  August 1, 2012        Respectfully submitted,

14

15                         */s/ Jose L. Patiño*

16                         Jose L. Patiño (CA Bar No. 149568)

17                         jlpatino@jonesday.com
                           Nicola A. Pisano (CA Bar No. 151282)

18                         napisano@jonesday.com
                           Christopher C. Bolten (CA Bar No. 268284)

19                         ccbolten@jonesday.com

20                         JONES DAY

21                         12265 El Camino Real, Suite 200
                           San Diego, CA 92130

22                         Phone:     (858) 314-1200
                           Fax:  (858) 314-1150

23

24                         Attorneys for Plaintiffs

25                         FUTUREWEI TECHNOLOGIES, INC. and
                           HUAWEI DEVICE USA INC.

26

27

28