# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

13-1090

**FUTUREWEI TECHNOLOGIES, INC., and HUAWEI DEVICE USA, INC.,**

*Plaintiffs - Appellants,*

**v.**

**ACACIA RESEARCH CORPORATION,**

*Defendant - Appellee,*

**and**

**ACCESS CO., LTD.,**

*Defendant - Appellee,*

**and**

**SMARTPHONE TECHNOLOGIES, LLC,**

*Defendant - Appellee.*

| RECEIVED |
| --- |
| **CLERK, U.S. DISTRICT COURT** |
| 1/9/2014 |
| **CENTRAL DISTRICT OF CALIFORNIA** |
| **BY:** _____DLM_____ **DEPUTY** |

Appeal from the United States District Court for the Central District of California in No. 12-CV-0511, United States District Judge Andrew J. Guildford.

<u>**MANDATE**</u>

In accordance with the judgment of this Court, entered December 03, 2013, and pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure, the formal mandate is hereby issued.

FOR THE COURT

/s/ Daniel E. O'Toole

Daniel E. O'Toole
Clerk of Court

cc: Benjamin R Askew
Gregory A. Castanias
Clerk of Court, Central District of California (Santa Ana)
Bruce A. Ericson
Douglas Quinton Hahn
Karla J. Kraft

Matthew T. Montgomery
Rajeev Muttreja
Stephen L. Ram
Marc J. Schneider
Anthony G. Simon
Stephanie H. To

# United States Court of Appeals
# for the Federal Circuit

———————————

**FUTUREWEI TECHNOLOGIES, INC.,** AND
**HUAWEI DEVICE USA, INC.,**
*Plaintiffs-Appellants,*

v.

**ACACIA RESEARCH CORPORATION,**
*Defendant-Appellee,*

AND

**ACCESS CO., LTD.,**
*Defendant-Appellee,*

AND

**SMARTPHONE TECHNOLOGIES, LLC,**
*Defendant-Appellee.*

———————————

2013-1090

———————————

Appeal from the United States District Court for the Central District of California in No. 12-CV-0511, Judge Andrew J. Guildford.

———————————

Decided:  December 3, 2013

———————————

2    FUTUREWEI TECHNOLOGIES, INC. v. ACACIA RESEARCH CORP.

GREGORY A. CASTANIAS, Jones Day, of Washington, DC, argued for plaintiffs-appellants.  With him on the brief was RAJEEV MUTTREJA, of New York, New York.

BENJAMIN R. ASKEW, The Simon Law Firm, P.C., of Saint Louis, Missouri, argued for all defendants-appellees.  With him on the brief for Smartphone Technologies, LLC, were ANTHONY G. SIMON and STEPHANIE H. TO.  On the brief for Acacia were MARC J. SCHNEIDER, STEPHEN L. RAM, DOUGLAS Q. HAHN, and MATTHEW T. MONTGOMERY, Stradling Yocca Carlson & Rauth, P.C., of Newport Beach, California.  On the brief for Access Co., Ltd., were and SHARON L. O'GRADY and BRUCE A. ERICSON, Pillsbury Winthrop Shaw Pittman, LLP, of San Francisco, California.

_____

Before REYNA, MAYER, and TARANTO, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Huawei Device USA Inc. and Futurewei Technologies, Inc. (collectively, "Huawei") appeal a district court's dismissal of their complaint.  We affirm.

## BACKGROUND

Access Co., Ltd., which sells software for mobile communication devices, owns the five patents at issue in this appeal ("the five patents").  On July 31, 2009, Access entered into an exclusive license agreement with Acacia Patent Acquisition LLC ("APAC"), a wholly owned subsidiary of Acacia Research Corporation.  The agreement gives APAC "the exclusive right to grant sublicenses, to sue for and collect past, present and future damages and to seek to obtain injunctive or any other relief for infringement of" specified patents.

Section 11.3 of the agreement broadly disclaims the creation of any third-party-beneficiary rights:

> Nothing in this agreement, whether express or implied, shall be construed to give any person (other than the Parties and their respective permitted successors and assigns), any legal or equitable right, remedy or claim under or in respect of this Agreement or any covenants, conditions or provisions contained herein, as a third party beneficiary or otherwise.

The agreement contains two other provisions relevant to the present case. Section 2.1 states that APAC may not enforce the covered patents against, or seek licenses to practice the patents from, Access's customers and end-users in connection with Access's products and services. Section 9.1 states that "APAC and [Access] each irrevocably consent to the exclusive jurisdiction of any California state or federal court sitting in the Central District of California, over any suit, action or proceeding arising out of or relating to this Agreement." Those provisions remain in the agreement despite other amendments.

On December 14, 2009, APAC assigned all of its rights, obligations, interests, and liabilities in identified patents covered by the license agreement to a wholly owned subsidiary, SmartPhone Technologies LLC. The license agreement as amended and the assignment cover the five patents.

On April 3, 2012, SmartPhone sued Huawei, which makes mobile handsets and tablets, in the Eastern District of Texas, alleging that certain Huawei products infringe the five patents. Compl. for Patent Infringement, SmartPhone Tech. LLC v. Huawei Tech. Co. et al., No. 6:12-cv-245 (E.D. Tex. Apr. 2, 2012), ECF No. 1. The next day, April 4, 2012, Huawei brought the present action against SmartPhone, Acacia Research, and Access in the Central District of California. The operative complaint (the second amended complaint) alleges that Huawei has been an Access customer for more than ten years and has

4    FUTUREWEI TECHNOLOGIES, INC. v. ACACIA RESEARCH CORP.

contracted with Access to "purchase[] Access products, including software for use on certain models of Huawei's mobile handsets."

Counts 1-5 of the complaint seek declaratory judgments of noninfringement of the five patents, and counts 6-10 seek declaratory judgments of invalidity of the same patents. Count 11 is entitled "Enforcement of Rights as a Third-Party Beneficiary," but neither count 11 nor the prayer for relief expressly asks for a declaratory judgment that Huawei has that status. Rather, based on section 2.1's protection of Access's customers, count 11 alleges that the parties to the agreement intended Huawei to benefit from the agreement, that SmartPhone is bound by section 2.1 as assignee, and that there is "an actual and justiciable controversy . . . concerning the rights of Huawei as a third-party beneficiary." Counts 12-15 of the complaint seek to impose tort liability under California law for interference with contractual and economic relations and for unfair competition. Count 16, when read with the prayer for relief, seeks a declaratory judgment that Acacia Research and SmartPhone are acting as corporate alter egos.

SmartPhone, Acacia Research, and Access moved to dismiss Huawei's complaint. On October 22, 2012, the district court granted their motions. *Futurewei Techs., Inc. v. Acacia Research Corp.*, No. SACV 12-0511, Slip. Op. (C.D. Cal. Oct. 22, 2012), ECF No. 69. Based on the infringement action filed against Huawei in Texas before Huawei responded with the present declaratory-judgment action, the district court dismissed the noninfringement and invalidity counts (1-10) under the first-to-file rule, which "permits a district court to decline jurisdiction when a complaint involving substantially similar parties and issues has already been filed in another district court." *Id.* at 4. The court added that "[t]he general rule that the first-filed case is favored over the second-filed action may be even stronger where the second-filed action

is [for] a declaratory judgment." *Id.* at 5.   The court explained that "the subject matter in the second case is either the infringement or validity of the patents asserted in the first action or the fact that SmartPhone attempted to assert those patents against [Huawei] in Texas." *Id.* at 6-7.

The district court dismissed count 11 for failure to state a claim.   Noting Huawei's "conclusory allegation" that the parties to the license agreement intended Huawei to benefit from it, the court explained that the agreement, which was attached to the complaint, must prevail over a general allegation where they conflict. *Id.* at 10 (relying on *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), and *Northern Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1999)).   Here, the court concluded, section 11.3 of the license agreement "clearly expresses the contracting parties' intention that the license not create any third-party beneficiaries." *Id.* at 10.

The district court then dismissed counts 12-15 and, for separate reasons, count 16.   As to count 16, which seeks a declaration that SmartPhone and Acacia Research are alter egos, the court reasoned that, under Federal Rule of Civil Procedure 13(a), this count is a compulsory counterclaim to the claims in the Texas case and therefore must be brought in that case. *Id.* at 13.   The court noted that the parties contested whether a cause of action even exists to seek a freestanding declaratory judgment of alter-ego status. *Id.*

Having dismissed all of Huawei's claims, the district court denied Huawei's request for discovery to help establish jurisdiction, explaining that discovery "would not affect the Court's reasoning regarding the first-to-file rule or Plaintiffs' failure to state a claim, and would thus be futile." *Id.* at 13.   And the court denied Huawei's request for leave to file a third amended complaint, explaining

that Huawei "'could not possibly cure the deficien[cies]'" of the dismissed complaint. *Id.*

Huawei appeals.   We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Huawei appeals the district court's dismissal of counts 11 and 16 of the complaint.   We affirm the dismissal of those counts, but we rely on the first-to-file rule, concluding that, like counts 1-10, counts 11 and 16 both belong in the Eastern District of Texas.   The district court did not rely on this ground for counts 11 and 16, but in the circumstances here, we are not precluded from doing so.

Huawei suffers no prejudice from our relying on this ground, and appellees have embraced it as a substitute basis for dismissal.   If there is any change in the scope of relief, it is only to provide appellees somewhat less relief. Moreover, the district court did not reject this ground for counts 11 and 16, and our analysis simply applies to counts 11 and 16 the first-to-file conclusion that the district court itself drew, "at a minimum," for counts 1-10. *Futurewei Techs.*, No. SACV 12-0511, Slip. Op. at 9.   We rely on an alternative ground that is supported by the record and that is consistent with the district court's own reasoning.

When two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).   This "first-to-file" rule exists to "avoid conflicting decisions and promote judicial efficiency." *Id.*   But the rule is not absolute; exceptions may be made if justified by "considerations of judicial and litigant economy, and the just and effective disposition of disputes." *Elecs. for*

*Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005) (internal quotation marks omitted). Justification for an exception may be found in "the convenience and availability of witnesses, [the] absence of jurisdiction over all necessary or desirable parties, . . . the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993). Resolution of whether the second-filed action should proceed presents a question sufficiently tied to patent law that the question is governed by this circuit's law. *Elecs. for Imaging*, 394 F.3d at 1345-46. Application of the first-to-file rule is generally a matter for a district court's discretion, exercised within governing legal constraints. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005); *Merial*, 681 F.3d at 1299.

### A

It is not disputed that the district court properly invoked the first-to-file rule to dismiss counts 1-10, which request declaratory judgments of non-infringement and invalidity of the five patents already in litigation in Texas. The analysis that supported that result applies as well to count 11. We assume, for present purposes, that count 11 requests some relief, namely, a declaratory judgment that Huawei is a third-party beneficiary of the license agreement entitled to enforce its provisions. We have no doubt that it would be both just and efficient to have Huawei's third-party-beneficiary status litigated, if necessary, in Texas. *See Genentech*, 998 F.2d at 938.

Third-party-beneficiary status benefits Huawei not for its own sake but only instrumentally—to give it the right to enforce certain contract provisions. Here, Huawei has said that its status as a third-party beneficiary can matter for two purposes: to invoke the license agreement's section 2.1 to protect it against the allegations it is infringing the five patents; and to invoke the agreement's

section 9.1, regarding forum selection.  Those provisions of the license agreement are already at issue in the first-filed Texas action, or readily could be.  In that action, Huawei has raised an affirmative defense that, as an Access customer, it is "licensed and/or impliedly licensed to practice the asserted patents."  Defendants' Answer, Counterclaims, and Third-Party Compl., No. 6:12-cv-245 (Nov. 9, 2012), ECF No. 80.  It also has moved to transfer the Texas case.  *Id.*, ECF No. 75 (Nov. 2, 2012).  Huawei can litigate its status as a third-party beneficiary in support of its positions in that action.[1]

It may be that Huawei can secure protection against or transfer of the Texas suit without having to establish that it has the legal status of a third-party beneficiary of the agreement.  For example, section 2.1 may give Huawei a license for the challenged activities, and transfer may be required or warranted based in whole or in part on the forum-selection clause or based on the more

---

[1]   On November 12, 2013, the magistrate judge in the Texas case denied Huawei's motion to transfer.  With reconsideration and review possible, that ruling presumably does not conclusively settle the transfer question in the Texas case.  We note particularly that, given appellees' embrace of a first-to-file dismissal as a substitute ground of affirmance here and the first-to-file rule's rationale that the Texas court rather than the California court should decide the merits of the issues presented by counts 11 and 16, the California court's rationales for dismissing those counts cannot be regarded as binding against Huawei; those issues are open for fresh consideration in the Texas case if necessary.  We do not regard it as necessary to vacate the California court's rulings on those counts and order dismissal on the first-to-file ground, but our affirmance of the judgment on the first-to-file ground has the same effect.

FUTUREWEI TECHNOLOGIES, INC. v. ACACIA RESEARCH CORP.      9

multi-factored approach that generally governs change of venue.  *See In re Atl. Marine Constr. Co.*, 701 F.3d 736 (5th Cir. 2012), *cert. granted*, 133 S. Ct. 1748 (2013); *In re Broadcom Corp.*, MISC 141, 2013 WL 1736487 (Fed. Cir. Apr. 23, 2013) (unpublished opinion, discussing *Atlantic Marine*).[2]  Those possibilities may make it unnecessary for Huawei's status as a third-party beneficiary to be decided in the Texas case, but there is no doubt that Huawei can argue for that status in the Texas case.  And there is likewise no doubt that keeping the issue in the Texas case will serve key objectives of the first-to-file rule, including minimization or avoidance of "duplication of effort, waste of judicial resources, and risk of inconsistent rulings that would accompany parallel litigation."  *Futurewei Techs.*, No. SACV 12-0511, Slip Op. at 9.

Finding an exception to the first-to-file rule here is unsupported by any substantial countervailing considerations.  Huawei has not shown that judicial or litigant interests in economy favor allowing count 11 to proceed in this second-filed declaratory-judgment action.  Indeed, Huawei is a Texas corporation and has its principal place of business in Texas.  At this point, moreover, with the dismissal of counts 1-10 no longer disputed, the non-infringement and invalidity issues will be litigated in the Texas case, unless that case is transferred.  Separating the third-party-beneficiary issue cannot serve the objective of efficiency.

The interest in the just and effective disposition of disputes likewise does not warrant an exception to the

---

[2]  The Supreme Court, in *Atlantic Marine*, is currently addressing the significance of forum-selection clauses in deciding whether a case should remain in a plaintiff-selected forum.  The analysis here does not depend on the Supreme Court's disposition in the *Atlantic Marine* case.

first-to-file rule.  The Texas court can decide the issues presented by count 11, if necessary, including the relationship between the no-third-party-beneficiary rights provision of the license agreement and either (a) the enforcement-protection provision or (b) the forum-selection provision.  Those issues may raise questions of California law, such as whether (as the parties suggested to this court during oral argument) status as a third-party beneficiary is not always all or nothing: where a contract broadly disclaims third-party-beneficiary rights, but another provision conferring particular benefits meets the standard for such rights, perhaps third-party-beneficiary status is limited to that provision.  *See, e.g., Prouty v. Gores Tech. Group*, 18 Cal. Rptr. 3d 178, 184 (Cal. App. 3d Dist. 2004) (finding that where two companies included a specific provision granting rights to one company's employees that "expressly benefit[ted] them, and only them," this specific provision was an exception to the contract's general no-third-party beneficiaries provision); *cf.* Restatement (Second) of Contracts § 302 (1981) (likewise appearing to tie third-party beneficiaries' rights to particular promises).  Such questions may not have to be answered, but if they do, the Texas court can answer them.  Choice of law may affect a transfer analysis, but the possibility of having to decide a California-law question is not enough, in the present posture of this case, to support an exception to the first-to-file rule.

B

The same conclusion follows for count 16, which seeks a declaratory judgment that SmartPhone is acting as Acacia Research's alter ego.  That count also is directly related to Huawei's affirmative defense in the Texas litigation that it has rights to practice the five patents under the license agreement between Access and Acacia Research's wholly owned subsidiary APAC.  It makes no sense for this count to be adjudicated as a stand-alone claim in California while the relevant, substantive claims

to which it directly relates are being litigated in Texas. Indeed, SmartPhone's status as an alter ego to Acacia Research matters only insofar as it affects substantive rights found elsewhere—here, the rights being litigated in Texas. *Cf. Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1251 (9th Cir. 2010) (explaining that, under California law, "there is no such thing as a substantive alter ego claim at all"); *Hennessy's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351, 1359 (Cal. Ct. App. 1988) ("A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural, i.e., to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation. . . .").

Although we rely on the first-to-file rule in affirming dismissal of count 16, our conclusion is indirectly supported by the district court's conclusion that count 16 is a compulsory counterclaim under Federal Rule of Civil Procedure 13. The Ninth Circuit applies a "the logical relationship test" to determine whether or not a claim is compulsory. *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195-96 (9th Cir. 2005). "This flexible approach . . . attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. Co. of Am.,* 827 F.2d 1246, 1249 (9th Cir. 1987) (internal quotation marks omitted).

> A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.

12   FUTUREWEI TECHNOLOGIES, INC. v. ACACIA RESEARCH CORP.

*Pegasus Gold*, 394 F.3d at 1196.  Here, the logical relationship is strong: the license agreement gives rise to Huawei's alter-ego claim, to SmartPhone's affirmative right to enforce the patents in the Texas case, and to Huawei's defense in that case that it may practice the patents as an Access customer—a defense that undergirds Huawei's standing to seek a declaratory judgment on the alter-ego issue in the first place.  Rule 13 analysis thus bolsters the first-to-file conclusion here.

### C

Because counts 11 and 16 are properly dismissed under the first-to-file rule, we need not address Huawei's motion to amend its complaint and its request for additional discovery to establish jurisdiction.

**AFFIRMED**